# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **IHOP RESTAURANTS LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **1385 – TYLER, INC. and MEREDITH ELSTON**, <br><br> Defendants. | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF, SPECIFIC PERFORMANCE, AND/OR DAMAGES

Plaintiff IHOP Restaurants LLC ("IHOP") brings this Complaint for Injunctive Relief, Specific Performance and/or Damages (the "Complaint") against its former franchisee, Defendants 1385 – Tyler, Inc. ("1385"), and that entity's owner, Meredith Elston (collectively, "Elston" or "Defendants").

### Nature of the Action

1.  This action arises out of Defendants' refusal to comply with any of the post-expiration obligations set forth in the Franchise Agreement that 1385 entered into with IHOP. That Franchise Agreement expired by its terms on February 23, 2020, and was not extended. As a result, Defendants were required, among other things, to immediately (i) cease using IHOP's federal registered trademarks and operating system, and (ii) turn over possession of the restaurant (which they leased from IHOP) back to IHOP.

2.  Because of their refusal to comply with these obligations, Defendants left IHOP no option but to bring this lawsuit. IHOP now seeks, among other things, a permanent injunction

or specific performance (i) enjoining Elston's wrongful and unlawful retention of IHOP's real and personal property, (ii) enjoining Elston's wrongful and unlawful use of IHOP's federally registered trademarks, and (iii) enforcing the post-expiration obligations set forth in the Agreement. IHOP alternatively seeks damages for Elston's breaches of the Agreement, as well as the attorneys' fees and costs it has incurred and will incur in prosecuting this action, as provided by statute and the parties' Agreement.

## Parties

3.  IHOP is a Delaware Limited Liability Company with its principal place of business in Glendale, California. IHOP is engaged in the business of operating, and granting franchises to qualified persons to operate, IHOP branded restaurants using IHOP's distinctive business format, system of operations, and proprietary names and marks. IHOP is the successor in interest to International House of Pancakes, Inc. IHOP Funding LLC is the sole member of IHOP, IHOP SPV Guarantor LLC is the sole member of IHOP Funding, and International House of Pancakes LLC is the sole member IHOP SPV Guarantor. Each entity is a Delaware Limited Liability Company, and each has its principal place of business in California. DineBrands Global, Inc. is the sole member of International House of Pancakes LLC. DineBrands Global is a Delaware corporation with its principal place of business in California.

4.  Upon information and belief, defendant 1385 – Tyler, Inc. is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Tyler, Texas.

5.  Upon information and belief, defendant Meredith Elston is a resident of Texas and the owner and operator of 1385 – Tyler, Inc. from the execution of the Agreement through the present.

## Jurisdiction and Venue

6. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under common law.

7. This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. This Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## IHOP's Registered Trademarks and Service Marks

9. IHOP has developed, and is the sole and exclusive owner of, a distinctive and uniform system (the "IHOP System") relating to the establishment and operation of IHOP restaurants. IHOP restaurants feature, among other things, distinctive breakfast, lunch, dinner, and desert menus, and conduct special events to raise money for charitable organizations, such as National Pancake Day.

10. To identify the source, origin and sponsorship of IHOP restaurants and the products and services they offer, and to distinguish those restaurants, products and services from those established, made, offered and sold by others, IHOP has extensively used certain

trademarks, service marks, trade names, logos, emblems and indicia of origin, including, but not limited to, the federally registered "IHOP®" name and marks (the "IHOP Marks").

11. The IHOP Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the IHOP Marks continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

12. IHOP has given notice to the public of the registration of the IHOP Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that IHOP remains the exclusive user of the IHOP Marks.

13. IHOP has continuously used the IHOP Marks in interstate commerce in connection with the promotion, operation, and franchising of IHOP restaurants and the promotion and sale of the products and services they offer throughout the United States, including the State of Texas, since the dates of their registration.

14. By virtue of IHOP's long-standing and continuous use of the IHOP Marks, IHOP owns valid and enforceable trademark and service mark rights in and to the IHOP Marks.

15. IHOP has the exclusive right to use and license the IHOP Marks and derivations thereof, as well as the distinctive IHOP System with which franchisees offer IHOP products to the public under the IHOP Marks. Pursuant to franchise agreements entered into by and between IHOP and its authorized and approved franchisees, IHOP—in its full and unfettered discretion— grants franchises to qualified persons to own and operate IHOP restaurants using the IHOP Marks and the IHOP System, but only in such manner and at such locations as are expressly authorized by IHOP.

16. IHOP and its franchisees use the IHOP Marks as the marks and trade identity by which the products and services offered by IHOP and its franchisees are distinguished from other restaurants and the products and services made and sold by them.

17. IHOP and its authorized franchisees have extensively advertised and promoted IHOP restaurants and the products and services they offer under the IHOP Marks throughout certain portions of the United States, including Texas, and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by IHOP and its franchisees under the IHOP Marks have met with widespread public approval and have established demand and goodwill among consumers throughout certain portions of the United States, including Texas.

### The Parties' Written Agreements

18. On October 12, 2005, IHOP and 1385 entered into a Franchise Agreement, Ex. A, under which Elston was granted a franchise to operate an IHOP restaurant, using the IHOP Marks and IHOP's operating system, at 115 West Southwest Loop 323, Tyler, Texas 75701 (the "Agreement"). Elston simultaneously executed a Guarantee of Obligations under which he agreed (i) to "cure the default in any of the covenants, agreements or conditions of the Franchise Documents;" (ii) to "pay all damages that may arise as a consequence" of such default; and (iii) that IHOP could bring suit against him, without first having to seek a judgment against 1385. Exhibit B. Defendants do not own the property on which the restaurant is operated. Instead, they lease the property and the restaurant from IHOP, a copy of which is attached as Exhibit C (the "Lease").

19. Both the Agreement and the Lease expired by their own terms on February 23, 2020.

20. 1385 had no right to extend the Agreement. Section 3.03 of the Agreement specifically provides that the provision that grants extension rights under certain circumstances "shall not apply" if "'other' is checked in Recital C to this Agreement."

21. Under Recital C, the parties selected the option for the Agreement to be executed pursuant to the "Other" category by checking and initialing the box next to the term.

22. Upon expiration of the Agreement, Defendants agreed that, among other things, they would discontinue use of all IHOP Marks, cease operation of the IHOP-owned restaurant, and surrender all physical property bearing or containing the IHOP Marks. *See* Sections 8.09 and 16.02.

23. Section 16.11 of the Agreement provides that in an action to enforce the Agreement, the prevailing party "shall be reimbursed by the losing party for all costs and expenses incurred in connection herewith, including reasonable attorneys' fees for the services rendered to such prevailing party."

### Elston's Breach of the Franchise Agreement

24. The Agreement expired pursuant to its own terms effective February 23, 2020.

25. By letter dated April 2, 2019, IHOP sent Defendants a letter stating that IHOP did not intend to extend the Agreement.

26. There has been no extension of the Agreement or execution of a separate written agreement between the parties that would allow Defendants to continue operating the restaurant and using the IHOP Marks after February 23, 2020.

27. In breach of the obligations under the Agreement, Defendants failed to discontinue all use of the IHOP Marks, cease operation of the restaurant, and surrender physical property bearing or containing the IHOP Marks to IHOP.

28. In breach of the obligations under the Agreement, Defendants have continued to use IHOP Marks and have continued to operate the restaurant, and have retained IHOP's property from February 23, 2020, through the present.

**Elston's Infringement of the IHOP Marks**

29. Notwithstanding the expiration of the Agreement, Elston continues to use the IHOP Marks and the IHOP System in connection with the operation of the restaurant, to market and promote the restaurant through the use of the IHOP Marks, and to hold the restaurant out to the public as an authorized IHOP restaurant when it is not. Attached as Exhibit D are photographs taken on February 25, 2020, demonstrating the Defendants' unauthorized operation of the restaurant and use of the IHOP Marks.

30. Elston's post-expiration use of the IHOP Marks is without the license or consent of IHOP and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

31. In addition to the fact that both IHOP and Elston offer the identical products at their restaurants, the products provided by Elston using the IHOP Marks are offered to the same class of consumers as those who patronize authorized IHOP restaurants. Upon seeing the familiar IHOP Marks through Elston's unauthorized use thereof, consumers will be deceived into concluding that the restaurant, and the products and services offered in connection therewith, are subject to IHOP's supervision, are sponsored or endorsed by IHOP, and bear the IHOP Marks pursuant to IHOP's authority and permission.

32. So long as Elston continues to use the IHOP Marks in connection with the operation of the restaurant, consumers have no practical way of knowing that Elston is operating the restaurant without IHOP's authorization, sponsorship, or endorsement. As a result, any

consumer dissatisfaction with Elston's restaurant, or with the products and services offered in connection therewith, will be attributed to IHOP and the entire IHOP network.

33. Elston has received actual notice of the violation and infringement of the IHOP Marks and has constructive notice of IHOP's rights in the IHOP Marks and the registrations thereof pursuant to 15 U.S.C. § 1072. Elston's continued infringement is willful, malicious, fraudulent and deliberate.

34. IHOP has at all times complied with and fully performed all of its obligations under the Franchise Agreement.

## COUNT I

## LANHAM ACT - TRADEMARK INFRINGEMENT

35. IHOP repeats and realleges ¶¶ 1 through 34 of its Complaint as and for this ¶ 35, as if fully set forth herein.

36. Elston's acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the IHOP Marks, and Elston's sale, offering for sale, distribution or advertising of goods and services under the IHOP Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

37. As a direct and proximate result of Elston's infringement, IHOP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

38. IHOP has no adequate remedy at law because the IHOP Marks are unique and represent to the public IHOP's identity, reputation, and goodwill, such that damages alone cannot fully compensate IHOP for Elston's misconduct.

39. Unless enjoined by the Court, Elston will continue to use and infringe the IHOP Marks, to IHOP's irreparable injury. This threat of future injury to IHOP's business identity, goodwill, and reputation requires injunctive relief to prevent Elston's continued use of the IHOP Marks and to ameliorate and mitigate IHOP's injury.

## COUNT II

## LANHAM ACT - UNFAIR COMPETITION

40. IHOP repeats and realleges ¶¶ 1 through 39 of its Complaint as and for this ¶ 40, as if fully set forth herein.

41. Elston's acts, practices, and conduct, as described above, constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, or to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

42. As a direct and proximate result of Elston's unfair competition, IHOP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

43. IHOP has no adequate remedy at law because the IHOP Marks are unique and represent to the public IHOP's identity, reputation, and goodwill, such that damages alone cannot fully compensate IHOP for Elston's misconduct.

44. Unless enjoined by the Court, Elston will continue to compete unfairly with IHOP, to IHOP's irreparable injury. This threat of future injury to IHOP's business identity,

goodwill, and reputation requires injunctive relief to prevent Elston's continued unfair competition and to ameliorate and mitigate IHOP's injury.

## COUNT III

## **COMMON LAW UNFAIR COMPETITION — PASSING OFF**

45. IHOP repeats and realleges ¶¶ 1 through 44 of its Complaint as and for this ¶ 45, as if fully set forth herein.

46. Elston's acts, practices, and conduct, including the use of the IHOP System and the IHOP Marks in conjunction with the operation of their restaurant, constitutes "passing off" under Texas common law on unfair competition based on the false designation of origin, false or misleading descriptions or representations of fact, false advertising, and/or unfair or deceptive trade practices, in that they are and/or were likely to cause confusion or to cause mistake, or to deceive others as to the affiliation, connection, or association of Elston with IHOP and the IHOP network of franchised restaurants, or as to the origin, sponsorship, or approval of Elston's goods and services.

47. As a direct and proximate result of Elston's "passing off," IHOP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

48. IHOP has no adequate remedy at law because the IHOP Marks and IHOP System are unique and represent to the public IHOP's identity, reputation, and goodwill, such that damages alone cannot fully compensate IHOP for Elston's misconduct.

49. Unless enjoined by the Court, Elston will continue to compete unfairly with IHOP, to IHOP's irreparable injury. This threat of future injury to IHOP's business identity,

goodwill, and reputation requires injunctive relief to prevent Elston's continued unfair competition, and to ameliorate and mitigate IHOP's injury.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION — MISAPPROPRIATION

50. IHOP repeats and realleges ¶¶ 1 through 49 of its Complaint as and for this ¶ 50, as if fully set forth herein.

51. Elston's acts, practices, and conduct, including the use of the IHOP System and the IHOP Marks in conjunction with the operation of the restaurant in direct competition with IHOP and the IHOP network of franchised restaurants, constitutes misappropriation under Texas common law on unfair competition.

52. As a direct and proximate result of Elston's misappropriation of the IHOP Marks and IHOP System, IHOP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

53. IHOP has no adequate remedy at law because the IHOP Marks and IHOP System are unique and represent to the public IHOP's identity, reputation, and goodwill, such that damages alone cannot fully compensate IHOP for Elston's misconduct.

54. Unless enjoined by the Court, Elston will continue to engage in misappropriation of the IHOP Marks and IHOP System, to IHOP's irreparable injury. This threat of future injury to IHOP's business identity, goodwill, and reputation requires injunctive relief to prevent Elston's continued unfair competition, and to ameliorate and mitigate IHOP's injury.

# COUNT V

## BREACH OF CONTRACT – POST EXPIRATION OBLIGATIONS (SPECIFIC PERFORMANCE)

55. IHOP repeats and realleges ¶¶ 1 through 54 of its Complaint as and for this ¶ 55, as if fully set forth herein.

56. Elston has breached the Agreement by failing to perform his post-expiration obligations under the Agreement, including his obligations (i) to cease using the IHOP Marks and IHOP System, (ii) to cease operating IHOP's restaurant, and (iii) to surrender all of IHOP's real and personal property.

57. The Agreement is governed by California law, under which the remedy of specific performance is available when (i) the contract is sufficiently definite and certain in its terms to be enforced, (ii) the contract is reasonable, (iii) the plaintiff has performed his obligations under the contract, (iv) the defendant has failed to perform his obligations under the contract, (v) the contract is supported by adequate consideration, and (vi) there is no adequate remedy at law. All elements are met here.

58. Elston's post-expiration obligations are sufficiently definite and certain, as there is no confusion about the nature of what Elston is obligated to do — he must cease using and surrender IHOP's real, personal, and intellectual property.

59. The Agreement itself is reasonable and supported by adequate consideration. In exchange for the license to operate the restaurant, Elston was required to pay IHOP an initial fee of $50,000 and weekly fees equivalent to 5.5% of the restaurant's gross sales. The fee structure is reasonable and commonplace for this type of franchise agreement.

60. IHOP has fully performed its obligations under the Agreement during its 15-year term and has no legal obligation to extend the Agreement or enter into a new agreement with Elston.

61. Elston has breached his post-expiration obligations and will continue to do so unless the Court orders Elston to specifically perform his post-expiration obligations.

62. IHOP has no adequate remedy at law. Unless Elston is ordered to perform the post-expiration obligations under the Agreement, IHOP is likely to be substantially injured in its future business, including harm to its business identity, goodwill, reputation, revenues, and profits.

63. This threat of future injury to IHOP requires that Elston be ordered to specifically perform the post-expiration obligations under the Agreement, as it is the only way to prevent Elston's continued breach and to ameliorate and mitigate IHOP's injury.

64. In the alternative, IHOP respectfully requests that the Court award damages for Elston's breach of contract.

## COUNT VI

## FORCIBLE DETAINER

65. IHOP repeats and realleges ¶¶ 1 through 64 of its Complaint as and for this ¶ 65, as if fully set forth herein.

66. IHOP is entitled to possession of the restaurant located at 115 West Southwest Loop 323, Tyler, Texas 75701, pursuant to the post-expiration obligations of the Agreement and as the landlord with respect to the expired Lease.

67. Elston is a trespasser on the property and has unlawfully refused IHOP's demand that Elston surrender the restaurant, in violation of Tex. Prop. Code Sec. 24.002.

68. A writ of possession is necessary to restore the restaurant to IHOP's possession.

## COUNT VII

## COMMON LAW CONVERSION OF CHATTELS

69. IHOP repeats and realleges ¶¶ 1 through 68 of its Complaint as and for this ¶ 69, as if fully set forth herein.

70. IHOP is entitled to the return of all physical property subject to the IHOP Marks.

71. Elston unlawfully refused IHOP's demand that Elston surrender the property pursuant to Elston's post-expiration obligations under the Agreement, which constitutes conversion of chattels under Texas common law.

72. As a direct and proximate result of Elston's conversion, IHOP has been wrongfully deprived of its property and is entitled to recover for the losses incurred.

## PRAYER FOR RELIEF

**WHEREFORE,** IHOP respectfully prays for the following relief against Elston:

A. A permanent injunction enjoining Elston, his agents, servants and employees, and those people in active concert or participation with him, from:

1. using the IHOP Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the IHOP Marks;

2. otherwise infringing the IHOP Marks or using any similar designation, alone or in combination with any other components;

3. passing off any products or services as those of IHOP or its authorized franchisees;

4. causing a likelihood of confusion or misunderstanding as to the source or sponsorship of business, products, or services;

5. causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with IHOP and its franchisees or any of IHOP's products or services; and

6. unfairly competing with IHOP or its franchisees in any manner.

B. An Order directing Elston immediately to specifically perform post-expiration obligations under the Agreement, including, without limitation, his obligations:

1. to cease operating and surrender the restaurant; and

2. to surrender all other physical property subject to the IHOP Marks.

C. An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Elston, his respective affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with him, bearing the IHOP Marks, and all plates, molds, and other means of making the same, if any, be delivered to IHOP at Elston's cost.

D. That Elston be required promptly to eliminate his advertising under the IHOP Marks or any other confusingly similar designations from all media, including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Elston's cost.

E. That Elston be required to file with the Court and to serve upon IHOP's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order.

F. That Elston account for and pay over to IHOP all gains, profits and advantages derived by him as a result of his infringement of the IHOP Marks, breach of contract, unfair

competition, and conversion of property to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law.

G. That Elston pay to IHOP such damages as IHOP has sustained by reason of said trademark infringement, breach of contract, unfair competition, and conversion of property; and that, because of the willful nature of said infringement, the Court enter judgment for IHOP for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

H. An award of the costs and expenses, including reasonable attorneys' fees, incurred by IHOP in connection with this action through trial, appeal and Supreme Court review, as provided for by statute and the Agreement.

I. As applicable, damages in an amount to be proved at trial.

J. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 25th day of February, 2020.

By: /s/ James C. Bookhout

Robert M. Hoffman (*pro hac vice* to be filed)
Noah M. Schottenstein (*pro hac vice* to be filed)
James C. Bookhout
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
rob.hoffman@dlapiper.com
noah.schottenstein@dlapiper.com

*Attorneys for Plaintiff*
*IHOP Restaurants LLC*